Coös,
Nov. 1, 1910.

### PAQUETTE, *Adm'x*, v. BERLIN MILLS CO.

A failure to warn and instruct an inexperienced employee does not warrant a finding of negligence on the part of the master, when it conclusively appears that the servant's injury did not result from his ignorance of a concealed or obscure peril, but from his conduct in voluntarily leaving a place of safety for one of apparent danger.

CASE, for negligence. At the close of all the evidence a verdict was directed for the defendants, and the plaintiff excepted. Transferred from the April term, 1910, of the superior court by *Chamberlin*, J.

*Robert C. Murchie* and *Henry F. Hollis* (*Mr. Murchie* orally), for the plaintiff.

*Drew, Jordan, Shurtleff & Morris* and *Rich & Marble* (*Mr. Morris* and *Mr. Marble* orally), for the defendants.

BINGHAM, J. This action is brought by the administratrix of the estate of one Paquette, who was killed on July 16, 1908, while in the defendants' employment as a member of a switching crew.

The following facts appear from the evidence.    On the morn-
ing of the day of the accident, the crew was called upon to go to a
place on the defendants' road known as the Cross Power siding,
take two empty cars—a flat car and a box car—down the track
and across a bridge that spans the Androscoggin river, and leave
them upon a siding that makes off from the main line at a switch
300 feet below the bridge.    The shifting crew, in the performance
of its duty, went to the Cross Power siding, attached the front end
of the engine to the flat car, and proceeded to back down the track.
Before leaving the Cross Power siding, Seguin, the head switch-
man, took his position at the brake-staff at the end of the box car
nearest the flat car, and Paquette, either of his own motion or at
the direction of Ross, the yardmaster, went upon and stood in the
middle of the flat car.    Streeter, a superintendent at one of the
defendants' mill-yards, got upon the rear foot-board of the engine
and Ross upon the front foot-board next to the flat car.    With the
men in these positions, the engineer backed the engine down the
track.    When they had proceeded about 210 feet and were distant
about 450 feet from the siding below the bridge, Ross pulled the
pin from the coupling connecting the engine to the flat car, and the
engine, released from the cars, increased its speed and proceeded
down the track to a point on the main line below the switch.
When the engine reached the switch, Ross stepped off and set it
so that the cars, which were coming down and were then about 300
feet away, could go in on the side track.    At the time the engine
was disconnected from the flat car, Paquette remained standing
in the middle of the car, and later, when the engine came across
the bridge and approached the siding, he was seen sitting on a
timber that extended across the flat car between two posts, at a
point about two feet from the floor and two feet from the front
end of the car.    When about ten feet from the switch he passed
over the cross-piece and stood with his arm around a timber that
crossed the car two or three feet above the one on which he had
previously sat, or with his arm around one of the posts to which
the cross-timbers were attached.    About 300 feet below the
switch on the siding was a flat car. As Paquette passed the
switch, Ross called out to him to get back into the middle of the
car, and Paquette either replied that he would look out for him-
self, or simply looked around and grinned.    When about fifteen
feet from the stationary car, he released his hold from the cross-
timber or stake and stood about two feet from the front end of
the car, until it was within a foot or so of the stationary car, and
then jumped to that car, fell between the cars, and was run over
and killed.    When the cars passed the switch, Seguin was stand-
ing at the brake-staff on the box car applying the brake.    The

cars were then moving from six to ten miles an hour. The brake worked all right, but Seguin did not tighten it sufficiently; and the car Paquette was on, its speed having been reduced to two or three miles an hour, bumped into the flat car and, its brake not being set, sent it along a distance of some eighteen feet. When the two flat cars came to rest they were about three feet apart.

The plaintiff says that she should have been permitted to go to the jury on the questions of the defendants' failure to warn and instruct Paquette and of his exercise of care; that there was evidence from which it could have been found that he was inexperienced and ignorant of the dangers to be encountered in the defendants' service; that they were apprised, or ought to have been apprised, of his inexperience and need of instruction and warnings, at a time sufficiently early to have enabled them to give them to him; that they were negligent in failing to warn and instruct him; that his death was the result of their negligence; and that he was in the exercise of due care.

At the time Paquette met his death he had been in the defendants' employment as a member of the switching crew about two hours. When he sought this employment, he represented that he had had experience in this line of work on a railroad in Canada and in the yard of the International Paper Company. The plaintiff seeks to avoid the effect of this portion of her evidence by other evidence in which it appeared that Paquette joined the switching crew at about seven o'clock in the morning; that at twenty minutes after seven they had ridden on the engine down to the Cascade mill, where Ross joined them; that while there Ross and Streeter noticed that Paquette took an awkward position in setting brakes and acted a little green in throwing switches, and questioned him further as to his experience in railroading; and that later, at the Cross Power siding, he displayed awkwardness in stepping upon the foot-board of the engine. If from this and other evidence it could have been found that the defendants would not be justified in relying upon Paquette's representation that he was experienced in the line of work he had engaged to perform, and that he should have been instructed as to the proper way in which to couple and uncouple cars, set brakes, and throw switches, and where and how to board or depart from moving cars when called upon to do so in the discharge of his duties, and warned as to the hidden or obscure dangers of the employment, the evidence does not disclose that he met his death while doing or attempting to do any of these things, or while encountering any hidden or obscure danger. On the contrary, the evidence is that after having taken a position of safety upon the car, and with nothing to do but remain there

until it reached its destination, he went voluntarily, and for no apparent reason other than to satisfy his curiosity, to the front end of the car, being well aware that it was approaching the stationary car, and when within a foot of that car attempted to jump upon it and was killed. He was twenty-six years of age and, so far as appears, a man of average intelligence. At least, there is no evidence from which it could be found that he was not, and that the defendants knew or should have known that he was not. And under the circumstances it could not be found that the defendants should have anticipated that Paquette, without being required to perform any act of duty, would leave a place of safety and heedlessly attempt to jump from the car he was on to the stationary car, as they were about to come together.

The plaintiff, however, contends that after Paquette went to the front of the car, Ross saw him there and could have warned him to return to the middle of the car. But this contention cannot be maintained, as the uncontroverted evidence is that at the time Ross disconnected the engine from the flat car Paquette was in the middle of the car; that it was after this, and when the engine had gone ahead down the track, that Ross first saw that he had changed his position to the front of the car; and that when the car passed Ross at the switch, he warned him to return to the middle of the car. Whether the warning was heard and understood by Paquette can never be known; but that is of little importance in view of the fact that the evidence discloses that every reasonable endeavor was made to warn him after his danger was known. The verdict was properly directed.

*Exception overruled.*

All concurred.